IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:14-CV-00120-RJ

| | | |
|---|---|---|
| PAMELA KAY HARDEE, | ) | |
| | ) | |
| Plaintiff/Claimant, | ) | |
| | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-26, DE-27] pursuant to Fed. R. Civ. P. 12(c). Claimant Pamela Kay Hardee ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of her applications for a period of disability, Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, Claimant's Motion for Judgment on the Pleadings is denied, Defendant's Motion for Judgment on the Pleadings is allowed, and the final decision of the Commissioner is upheld.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on May 28, 2010 and filed an application for SSI on June 3, 2010, alleging disability beginning January 25, 2010. (R. 204-11). Both claims were denied initially and upon reconsideration. (R. 99-123). A hearing before the Administrative Law Judge ("ALJ") was held on October 25, 2012, at which Claimant was

represented by counsel and a vocational expert ("VE") appeared and testified. (R. 27-75). On February 4, 2013, the ALJ issued a decision denying Claimant's request for benefits. (R. 6-26). On April 7, 2014, the Appeals Council denied Claimant's request for review. (R. 1-4). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## III.  DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520, 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999).  "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps."  *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted).  The burden of proof and production during the first four steps of the inquiry rests on the claimant.  *Id.*  At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform.  *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c) and 416.920a(b)-(c).  This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation.  *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3).  The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique."  *Id.* §§ 404.1520a(e)(3), 416.920a(e)(3).

In this case, Claimant alleges that the ALJ erred by (1) failing to find that Claimant's malignant melanoma and hypertension were severe impairments, (2) improperly weighing the treating and examining physicians' opinions, (3) improperly determining Claimant's credibility and

3

RFC, and (4) in posing inaccurate hypothetical questions to the VE. Pl.'s Mem. Supp. Pl.'s Mot. J. Pleadings [DE-26-1] ("Pl.'s Mem.") at 13-19.

## IV. FACTUAL HISTORY

### A. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 11). Next, the ALJ determined Claimant had the following severe impairments: degenerative disc disease of the lumbar spine, degenerative joint disease of the left knee, obesity, sleep apnea, carpal tunnel syndrome status post surgical repair, and depression. (R. 11-12). The ALJ also found Claimant had nonsevere impairments of melanoma, hypertension, asthma, a vitamin B12 deficiency, and bilateral high frequency hearing loss. (R. 12). However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 12-13). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild limitations in activities of daily living and social functioning and moderate limitations in concentration, persistence and pace with no episodes of decompensation. (R. 13).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[1] requiring a sit/stand option every 45 minutes with the following

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R.

4

limitations: Claimant must avoid climbing ladders, ropes, and scaffolds but can occasionally climb ramps and stairs, must avoid concentrated exposure to hazards, dust, odors, and fumes, and can frequently, but not constantly, use her upper extremities for fine and gross manipulation. (R. 14). Additionally, Claimant is limited to simple, routine, repetitive tasks in that she can apply common sense understanding to carry out oral, written, and diagrammatic instructions. *Id.* In making this assessment, the ALJ found Claimant's statements about her limitations not fully credible. (R. 17-18).

At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of her past relevant work as a nurse aid, a self-service gas station manager, and a self-service attendant. (R. 19). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 19-20).

**B.     Claimant's Testimony at the Administrative Hearing**

At the time of Claimant's administrative hearing, Claimant was unemployed, living with her retired parents and a seventeen-year-old son. (R. 33-34). Claimant's son receives his late father's disability benefits. *Id.* Claimant last worked at the Gas Mart in January of 2010, and stopped working due to back problems and melanoma. (R. 34). At her last job, Claimant had to lift approximately 50 pounds and stand for long periods of time. (R. 41). Claimant has a twelfth grade education and received CNA certification, which is now expired. (R. 68). Claimant's melanoma was surgically removed and it has not recurred. (R. 34-35). Claimant testified that problems with her back and her leg are currently keeping her from working. (R. 35). Claimant has bulging disks

---

§§ 404.1567(b), 416.967(b).

and arthritis in her back, and is treated at Cape Fear Pain Management for those issues. *Id.* Claimant had disk problems for a number of years before she stopped working. (R. 42). Claimant could not remember when she last had an MRI taken of her back, but thought that it may have been in April of 2010, and knows that she has had two back MRIs. (R. 35-36). Claimant testified that she takes narcotics, has received three or four injections for her back pain, and has not been recommended for back surgery. (R. 36). Claimant was referred to the pain management clinic shortly after she stopped working, and has received approximately four back injections spaced four to five months apart. (R. 42-43). Although Claimant primarily complained of pain on the left side of her back, Claimant's doctor administered injections on both sides of Claimant's back. (R. 43). Claimant would receive injections when she had severe pain, but has not received any since starting narcotic pain medications the year prior to the hearing. *Id.* Claimant did not believe that the injections relieved her pain. *Id.* Claimant testified that her back pain lasted all day every day, and it would sometimes travel to her knee. (R. 44). Because of her back pain, Claimant cannot lift anything. *Id.* Claimant currently takes methadone, oxycodone, Flexeral, and Resteril for her back pain, and testified that she sleeps during the day because of her medications. (R. 44-45). Claimant takes her medication with breakfast, and then sleeps for two or three hours afterwards if no one wakes her up. (R. 45).

Claimant has arthritis in her left knee, and does not have any problems with her right knee. (R. 37). Claimant has had either an MRI or an X-ray taken of her left knee, but stated that her doctor believes she is too young for knee surgery. (R. 37-38). Claimant's left knee hurts when she sits, stands, or picks something up. (R. 46). Claimant's back also bothers her if she tries to lift anything. *Id.* Claimant also has arthritis in her back and in her leg, and takes Mobic daily. (R. 46-47).

Claimant testified that if she misses the Mobic, her knee throbs and is painful. (R. 47). Claimant assumes that the Mobic also makes her sleepy. *Id.*

Claimant also has carpal tunnel syndrome, and had surgery to relieve the pressure on her right hand on October 10, 2012. (R. 38, 47-48). Claimant has had carpal tunnel for seventeen years, and had problems with her hands while she was still working. (R. 48). Claimant testified that she experienced burning sensations in her fingers, and she was receiving monthly injections in her right wrist to relieve her pain. (R. 48-49). Claimant is right-handed, and had problems gripping with that hand prior to her surgery. (R. 49-50). For example, Claimant would drop her cigarette without realizing it while smoking. (R. 50). Claimant has also dropped her fork while trying to eat, and testified that between her back and knee problems, she has too much pain to stand at the stove and cook. (R. 51). Claimant was wearing a splint on her right hand after the surgery, and testified that her right fingertips were no longer burning, but she still experiences a burning sensation on several fingers of her left hand. (R. 38, 50). Claimant believes that since she stopped working, her carpal tunnel has not improved. (R. 38). Claimant has not had any injections or treatment for her carpal tunnel in her left hand, and stated that she still has some ability to grip with her left hand. (R. 39, 51). Once Claimant's right hand recovers, she will have the same surgery on her left hand. (R. 52). At the time of the hearing, Claimant was not able to drive due to her problems with her hands and back. (R. 51).

Claimant's current weight is 287 pounds, which she testified is normal, although her weight was fluctuating around the time of the hearing. (R. 39). Claimant testified that her weight had never caused her trouble with working. *Id.* Claimant uses a CPAP machine at night, which is titrated by her doctor's office. (R. 39-40). Claimant testified that she sleeps well at night, and falls asleep

during the daytime if she is sitting in a comfortable chair. (R. 40). Claimant has had asthma for nine years, and has trouble breathing around colognes and pollen. (R. 55). Sometimes Claimant has trouble breathing while sitting in her chair, but using her inhaler helps her breathe normally again. (R. 55-56). Claimant testified that she does not have asthmatic episodes often. (R. 56). Further, Claimant testified that cigarette smoking does not bother her asthma as much as other irritants. (R. 68). Claimant is treated for depression and anxiety by her general provider, and has not been referred to any mental health providers. (R. 40-41, 56-57). Claimant has episodes when she gets depressed, wants to be alone, and cries–these last for a day or two. (R. 57). Claimant's depression began after her husband died in 2009. (R. 57, 65). Claimant testified that she has depressive episodes every so often, depending on the time of year. (R. 57). Claimant takes Celexa daily and Xanax as needed, and testified that the Xanax makes her sleepy. (R. 57-58).

Claimant has problems with her blood pressure, for which she takes medication, and lately she has experienced her blood pressure fluctuating. (R. 53). Claimant is able to tell when she has low blood pressure because she gets off-balance, feels sick, and goes to sleep. (R. 53-54). Claimant will feel poorly until her blood pressure is regulated. (R. 54). Claimant testified that she used to take two medications for her blood pressure, but is now only taking one, and only has problems with her blood pressure maybe once every two or three months. *Id.*

Claimant testified that she cannot walk a block because of her back pain. (R. 58). She can only stand for five minutes because she has to put all of her weight on her right foot and is unable to stand up completely straight. *Id.* Claimant testified that she gets fidgety when she sits but can sit up straight in a chair, although she has to sit on the edge and not against the back. (R. 58-59). Claimant stated that she can lift a five-pound bag of sugar as long as she does not have to bend over.

8

(R. 59).  Claimant cannot stoop, bend, or squat because those actions pull on her back–when she

bends over, it is hard for her to get back up.  (R. 59-60).  Claimant testified that she can push with

her legs, but could not push a cart using her hands because of her difficulty walking.  (R. 60).

Claimant cannot reach over her head or above her shoulder because of her back pain.  (R. 61).

Claimant is scared of heights, and cannot climb a ladder or stairs.  *Id.*  Claimant testified that she can

climb the four steps from her porch to her house, but she has to hold onto the railing and step with

both feet on each step.  (R. 61-62).  Claimant cannot do any chores around the house such as

cooking, washing dishes, washing clothes, vacuuming, sweeping, mopping, or yard work.  (R. 62-

63).  Claimant's mother or children take care of the household chores.  (R. 63).  While Claimant can

normally drive a short distance, she cannot drive currently because of her hands.  *Id.*  Claimant needs

help dressing, in the bathroom, and brushing her hair, because she can only use her left hand.  (R.

63-64).  Claimant keeps her shoes tied so she can slip her feet into them.  (R. 64).  Claimant goes

grocery shopping at Food Lion or Walmart, but only with someone else, and goes to those stores

because they have electric scooters for her to use.  (R. 64-65).  Claimant believes that her condition

has gotten worse since she stopped working.  (R. 65).

## C.      Vocational Expert's Testimony at the Administrative Hearing

Valerie Allen testified as a VE at the administrative hearing.  (R. 67-75).  After the VE's

testimony regarding Claimant's past work experience (R. 67-68), the ALJ asked the VE to assume

a hypothetical individual of the same age, education and prior work experience as Claimant and

posed three hypothetical questions.  First, the ALJ asked whether the individual could perform

Claimant's past relevant work assuming the individual has the physical capacity to perform light

work, can sit, stand, and walk for six hours in an eight-hour work day, needs a 45 minute sit/stand

option, must avoid climbing ladders, ropes, and scaffolds, can occasionally climb ramps and stairs, needs to avoid concentrated exposures to heights and machinery, needs to avoid dust, odors, gasses, and fumes, and requires simple, routine, repetitive tasks that can be completed by applying common sense and understanding to carry out oral, written, and diagrammatic instructions. (R. 68-69). The VE responded that such an individual could not perform the Claimant's past work, but could perform the following jobs: office helper (light, unskilled, SVP-2, DOT # 239.567-010); ticket seller (light, unskilled, SVP-2, DOT # 211.467-030); and dining room cashier (light, unskilled, SVP-2, DOT # 211.462-010). (R. 69-70). The ALJ then added a further limitation of frequent, not constant use of the bilateral upper extremity for fine and gross manipulation. (R. 70). The VE responded that the ticket seller job would be excluded, but such an individual could also perform the job of furniture rental consultant (light, unskilled, SVP-2, DOT # 295.357-018). *Id.* Finally, the ALJ asked what jobs a hypothetical individual could perform who could do sedentary work and who was limited to occasional use of the dominant upper extremity and frequent use of the non-dominant upper extremity for fine and gross manipulation. (R. 71). The VE responded that such an individual would be precluded from all employment. *Id.*

Counsel for Claimant inquired whether the first hypothetical individual's ability to perform the identified jobs would be impacted if she needed a sit and stand option every four to five minutes. (R. 71-72). The VE responded that the limitation would not preclude the identified jobs because a sit/stand option after 45 minutes was already one of the imposed limitations. (R. 72). Counsel for Claimant then asked whether an individual with sensitivity to smoke and perfume would be precluded from the identified jobs in the first hypothetical, and the VE responded there would be a potential for irritation which might make it difficult for the individual to perform the jobs, but that

10

varies from individual to individual. (R. 72-74). The VE stated that her testimony was consistent with the Dictionary of Occupational Titles, except for her testimony about the sit/stand option, which was based on her 30 years of experience as a vocational rehabilitation counselor. (R. 74-75).

## V. DISCUSSION

### A. The ALJ's Consideration of Claimant's Impairments

Claimant contends that the ALJ erred by failing to classify her malignant melanoma and hypertension as severe impairments.[2] Pl.'s Mem. [DE-26-1] at 13-14. In response, Defendant argues that substantial evidence supports the ALJ's finding that Claimant's melanoma and hypertension were not severe impairments. Def.'s Mem. [DE-28] at 4-5. The court agrees with Defendant that substantial evidence supports the ALJ's consideration of Claimant's melanoma and hypertension, and any error here would be harmless.

At step two of the sequential evaluation process, the ALJ must consider the severity of the claimant's impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). "To be found disabled, an individual must have a medically determinable 'severe' physical or mental impairment or combination of impairments that meets the duration requirement." S.S.R. 96-3p, 1996 WL 374181, at *1 (July 2, 1996). The duration requirement provides that unless a claimant's "impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. §§ 404.1509, 416.909. An impairment will be considered to be severe "if it significantly limits an individual's physical or mental abilities to do basic work

---

[2] While Claimant's argument refers to step three, Pl.'s Mem. [DE-26-1] at 13, the court assumes that Claimant intends to refer to the ALJ's analysis at step two as step three addresses the severity of a claimant's impairments in connection with the listings and Claimant has made no argument referencing the listings. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

11

activities; an impairment(s) that is 'not severe' must be a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities." S.S.R. 96-3p, 1996 WL 374181, at *1; *see also* 20 C.F.R. §§ 404.1521, 416.921 (defining non-severe impairments and providing examples of basic work activities). The burden of proof and production during the second step rests on the claimant. *Pass*, 65 F.3d at 1203. "As long as a claimant has any severe impairment or combination of impairments, the ALJ must proceed beyond step two and consider all of the impairments (including non-severe impairments) at the remaining steps of the sequential evaluation process[.]" *Pittman v. Astrue*, No. 5:08-CV-83-FL, 2008 WL 4594574, at *4 (E.D.N.C. Oct. 10, 2008) (unpublished). Further, "where an ALJ nonetheless proceeds with the sequential evaluation upon the basis of other severe impairment(s), the failure to consider whether any other impairment also qualifies as 'severe' is harmless error." *Prince v. Colvin*, No. 5:11-CV-763-FL, 2013 WL 1786634, at *2 (E.D.N.C. Apr. 25, 2013) (unpublished).

Here, at step two, the ALJ determined that Claimant had the following severe impairments: degenerative disc disease of the lumbar spine, degenerative joint disease of the left knee, obesity, sleep apnea, carpal tunnel syndrome status post surgical repair, and depression. (R. 11). The ALJ then discussed Claimant's melanoma and hypertension, determining that they were non-severe impairments. (R. 12). Specifically, the ALJ stated that "[t]he record also reveals that the claimant has a history of melanoma; however the evidence shows that the claimant's condition never reoccurred." (R. 12). Additionally, "[t]reatment notes also showed that the claimant suffered from hypertension . . . but her symptoms were well controlled with medication when she was compliant." *Id.* "[T]here is no documentation that these minor medical problems have imposed recurring

12

vocationally restrictive limitations for a period of 12 continuous months. Consequently, these minor medical problems have imposed no more than a combination of slight abnormalities, which have no more than a minimal effect on the claimant's ability to work." *Id.* The ALJ then concluded that Claimant's melanoma and hypertension, among other impairments, were non-severe.

In support of her argument, Claimant points to the disability determination explanations prepared by the state agency non-examining consultants, Dr. Stephen Levin and Dr. Bonney Gregory. Pl.'s Mem. [DE-26-1] at 13. The task of this court is to determine whether substantial evidence supports the ALJ's determination. *See Coffman*, 829 F.2d at 517. It is insufficient for Claimant to simply point to other record evidence and argue that the ALJ's decision is unfounded, *Frazier v. Astrue*, No. 4:06-CV-254-FL, 2008 WL 138050, at *14 (E.D.N.C. Jan. 10, 2008) (unpublished), as this invites the court to re-weigh the evidence and substitute its own conclusions for those of the Commissioner, *Hays v. Sullivan*, 907 F.2d 14532, 1456 (4th Cir. 1990). Here, the ALJ determined that Claimant's melanoma and hypertension did not meet the duration requirement and had no more than a minimal effect on her ability to work, and substantial evidence supports his determination. (R. 12).

As to Claimant's melanoma, the record shows that the melanoma was surgically excised from Claimant's right posterior arm on January 25, 2010, and follow-up examinations documented no evidence of the melanoma reoccurring. (R. 386-90, 394-96); *see also* (R. 552–October 21, 2011 treatment note noting Claimant's melanoma was in remission). *But see* (R. 548–March 8, 2012 treatment note stating that Claimant had a lesion biopsied by a dermatologist/oncologist on March 5, 2012). As for the hypertension, Claimant stated at the hearing that she tries to take her blood pressure medication every day and she only has problems "maybe once every two or three months"

13

and her blood pressure "pretty much stays like it should." (R. 54). Thus, based on the record, substantial evidence supports the ALJ's decision that Claimant's hypertension and melanoma were not severe impairments and Claimant has not met her burden of demonstrating otherwise. And even if there were error at this step of the ALJ's evaluation, such error would be harmless where the ALJ proceeded "with the sequential evaluation upon the basis of other severe impairment(s)." *Prince*, 2013 WL 1786634, at *2; *accord Young v. Astrue*, No. 1:09CV1008, 2013 WL 47477, at *10 (M.D.N.C. Feb. 7, 2013) (unpublished) ("Where an ALJ has already determined that a plaintiff suffers from at least one severe impairment, any failure to categorize an additional impairment as severe generally cannot constitute reversible error, because, 'upon determining that a claimant has one severe impairment, the Secretary must continue with the remaining steps in his disability evaluation.'") (quoting *Maziarz v. Sec. of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)). Claimant's argument on this issue is thus without merit.

**B.    The ALJ's Consideration of the Medical Opinion Evidence**

Claimant contends that the ALJ erred by failing to properly evaluate the opinions from Claimant's treating and examining physicians, and by giving more weight to the opinions from state agency consulting, non-examining physicians than to Claimant's treating and examining physicians' opinions. Pl.'s Mem. [DE-26-1] at 14-16. In response, Defendant argues that substantial evidence supports the ALJ's consideration of the medical opinion evidence, and the record is bereft of any opinions by Claimant's treating and examining physicians. Def.'s Mem. [DE-28] at 5-7.

The regulations require the ALJ to consider all evidence in the record when making a disability determination. 20 C.F.R. §§ 404.1520(a)(3), 416.920(a)(3). Regardless of the source, the ALJ must evaluate every medical opinion received. *Id.* §§ 404.1527(c), 416.927(c). In general, the

14

ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. *Id.* §§ 404.1527(c)(1), 416.927(c)(1). More weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources, such as consultative examiners. *Id.* §§ 404.1527(c)(2), 416.927(c)(2). Though the opinion of a treating physician is generally entitled to "great weight," the ALJ is not required to give it "controlling weight." *Craig*, 76 F.3d at 590. In fact, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Id.*; *see also Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (stating "[t]he ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence"); *Mastro*, 270 F.3d at 178 (explaining "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence") (citation omitted).

If the ALJ determines that a treating physician's opinion should not be considered controlling, the ALJ must then analyze and weigh all of the medical opinions in the record, taking into account the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist. *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). While an ALJ is under no obligation to accept any medical opinion, *see Wireman v. Barnhart*, No. 2:05-CV-46, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006) (unpublished), he must nevertheless explain the weight afforded such opinions. *See* S.S.R. 96-2p, 1996 WL 374188, at *5 (July 2, 1996); S.S.R. 96-6p, 1996 WL 374180, at *1 (July 2, 1996). An ALJ may not reject

medical evidence for the wrong reason or no reason. *Wireman*, 2006 WL 2565245, at *8. "In most cases, the ALJ's failure to consider a physician's opinion (particularly a treating physician) or to discuss the weight given to that opinion will require remand." *Love-Moore v. Colvin*, No. 7:12-CV-104-D, 2013 WL 5350870, at *2 (E.D.N.C. Sept. 24, 2013) (unpublished) (citations omitted).

Medical opinions are defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis, and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). "Only those statements . . . that reflect judgments regarding a claimant's prognosis or limitations, or the severity of symptoms," and not those which merely report subjective complaints of the claimant's pain, constitute medical opinions as defined in the regulations. *Love-Moore v. Colvin*, No. 7:12-CV-104-D, 2013 WL 5366967, at *11 (E.D.N.C. Aug. 30, 2013) (unpublished) (citations omitted), *adopted by* 2013 WL 5350870 (E.D.N.C. Sept. 24, 2013).

Here, a review of the record indicates that there are no medical opinions rendered by Claimant's treating and examining physicians. The ALJ recognized this in his decision, stating that "there are no opinions of record from treating or evaluating physicians." (R. 18). Notably, while Claimant argues that the ALJ failed to properly weigh and evaluate opinions from her treating and examining physicians, she simply points to treatment notes contained in the record and does not cite to a specific opinion that the ALJ failed to weigh. Pl.'s Mem. [DE-26-1-] at 14-16. Further, Claimant argues that the ALJ "based his findings on his own medical opinion, without reference to the medical evidence he weighed or evaluated" and erred by giving more weight to the opinions of

the non-examining state agency consultants than to the opinions of the treating and examining physicians. *Id.* As to the non-examining state agency consultants, the ALJ gave those opinions little weight, noting that "the evidence at the hearing level shows the claimant is more limited than the consultants determined." (R. 18). The state agency consultants determined that Claimant could perform medium work. (R. 95-96, 108-09). The ALJ disagreed, noting that the evidence showed Claimant was more limited than the consultants had determined, and ultimately found that Claimant could perform light work with several exertional limitations. (R. 14, 18). The ALJ properly considered the consistency and supportability of the consultants' opinions with the evidence presented at the hearing level, and determined that Claimant was more limited than the consultants had opined. *Johnson*, 434 F.3d at 654 (listing consistency and supportability among the factors an ALJ is to consider when weighing a medical opinion). Thus, the ALJ did not err in assigning little weight to the opinion of the consultants. Claimant's argument that the ALJ erred in assigning more weight to the opinions of the state agency consultants than to the opinions of her treating and examining physicians is without merit where the ALJ properly weighed the opinions of the state consultants and there are no opinions from any treating or examining physicians in the record. And finally, where the ALJ thoroughly considered the medical evidence of record, *see* R. 15-19, Claimant's argument that the ALJ based his findings on his own medical opinion is without merit.

## C.     The ALJ's Credibility and RFC Determinations and Hypothetical Questions to the VE

Claimant argues that the ALJ erred in determining her RFC, specifically that the ALJ's RFC determination is contrary to the weight of the medical evidence and the medical evidence supports Claimant's subjective testimony about her symptoms, limitations, and restrictions. Pl.'s Mem. [DE-16-17. Claimant also argues that the ALJ's hypothetical questions posed to the VE did not include

17

all of her physical and mental limitations, notably that the ALJ failed to include limitations imposed by Claimant's treating and examining physicians, limitations documented in the Reports of Contact, and Claimant's severe impairments of melanoma and depression. *Id.* at 17-18. Claimant contends that the ALJ relied on the contents of the Reports of Contact, but incorrectly documented the contents of those reports. *Id.* In response, Defendant argues that substantial evidence supports the ALJ's findings that Claimant's allegations of disabling limitations were not entirely credible. Def.'s Mem. [DE-28] at 7-8. Further, Defendant argues that the limitations alleged by Claimant and her niece in the Reports of Contact were not supported by the evidence and the ALJ did not err by failing to include those limitations in his hypothetical questions to the VE. *Id.* at 8-11.

### 1. Credibility and RFC Determinations

An individual's RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5. Where a claimant has numerous impairments, including non-severe impairments, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments.") (citations omitted). The ALJ has sufficiently considered the combined effects of a claimant's impairments when each is separately discussed by the ALJ and the ALJ also discusses a claimant's complaints and activities. *Baldwin*

18

*v. Barnhart*, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005) (citations omitted). The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." S.S.R. 96-8p, 1996 WL 374184, at *7.

Here, the ALJ determined that Claimant had the RFC to perform light work with the following limitations:

> the claimant can lift and carry up to 20 pounds occasionally and 10 pounds frequently and stand, walk, and sit for 6 hours each in an 8-hour work day. The claimant must have a sit/stand option every 45 minutes. She must avoid climbing ladders, ropes and scaffolds but can occasionally climb ramps and stairs. The claimant must avoid concentrated exposure to hazards, dust, odors and fumes. She is limited to simple, routine, repetitive tasks in that she can apply common sense understanding to carry out oral, written and diagrammatic instructions. Based on the claimant's testimony, the claimant can frequently, but not constantly, use her upper extremities for fine and gross manipulation.

(R. 14). In making this assessment, the ALJ found Claimant's statements about her limitations not fully credible. (R. 17-18).

The ALJ appropriately exercised his discretion in discounting Claimant's testimony regarding the severity of her limitations. *Id.* When assessing a claimant's RFC, it is within the province of the ALJ to determine a claimant's credibility. *See Shively v. Heckler*, 739 F.2d 987, 989-90 (4th Cir. 1984) ("Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight.") (citation omitted). Federal regulations 20 C.F.R. §§ 404.1529(a) and 416.929(a) provide the authoritative standard for the evaluation of subjective complaints of pain and symptomology, whereby "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Craig*, 76 F.3d at 593-94. First, the ALJ must objectively determine whether the claimant

19

has medically documented impairments that could cause his or her alleged symptoms. S.S.R. 96-7p, 1996 WL 374186, at *2 (July 2, 1996); *Hines v. Barnhart*, 453 F.3d 559, 564 (4th Cir. 2006). If the ALJ makes this first determination, he must then evaluate "the intensity and persistence of the claimant's pain[,] and the extent to which it affects her ability to work," *Craig*, 76 F.3d at 595, and whether the claimant's statements are supported by the objective medical record. S.S.R. 96-7p, 1996 WL 374186, at *2; *Hines*, 453 F.3d at 564-65. Objective medical evidence may not capture the full extent of a claimant's symptoms, so where the objective medical evidence and subjective complaints are at odds, the ALJ should consider all factors "concerning the individual's functional limitations and restrictions due to pain and other symptoms." S.S.R. 96-7p, 1996 WL 374186, at *3 (showing the complete list of factors). The ALJ may not discredit a claimant solely because his or her subjective complaints are not supported by objective medical evidence. *See Craig*, 76 F.3d at 595-96. But neither is the ALJ required to accept the claimant's statements at face value; rather, the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." S.S.R. 96-7p, 1996 WL 374186, at *2; *see also Taylor v. Astrue*, No. 5:10-CV-263-FL, 2011 WL 1599679, at *4-8 (E.D.N.C. Mar. 23, 2011) (unpublished) (finding the ALJ properly considered the entire case record to determine that claimant's subjective complaints of pain were not entirely credible), *adopted by* 2011 WL 1599667 (E.D.N.C. Apr. 26, 2011).

Claimant points to the medical evidence from her treating and examining physicians and other medical sources to support Claimant's subjective testimony about her symptoms, limitations, and restrictions and to discredit the ALJ's RFC determination. Pl.'s Mem. [DE-26-1] at 16-17. However, as discussed above, the record contains no medical opinions from any of Claimant's treating and examining physicians, nor does Claimant point to any statement from a treating or

examining physician that imposes a limitation on her abilities. Further, Claimant points to the limitations documented in the Reports of Contact, which she argues were inaccurately stated by the ALJ and which conflict with the RFC determination.[3] *Id.* at 17-18. These limitations, documented in Reports of Contact with Claimant and Claimant's niece, provide that Claimant has trouble with fine manipulation due to her carpal tunnel syndrome, concentration and memory problems, depression, has trouble putting groceries away, can sit for 30 minutes, walk for 50 yards, has pain when she tries to bend, can stand for five minutes, must sit down to cook, cannot shop, and has to set phone reminders to remember her appointments. *Id.* at 18 (citing R. 495-96). The ALJ considered these limitations documented in the Reports of Contact, but found the extreme limitations described were not supported by the record. *Id.* at 17-19. Specifically, in finding Claimant not fully credible, the ALJ stated:

> the undersigned finds that the claimant's reports to her treating and examining physicians, as well as findings upon objective examination, are generally inconsistent with the claimant's testimony of such significant complaints of pain and dysfunction. Specifically, the claimant's activities of daily living are inconsistent with her allegations of such significant functional limitations, but are fully consistent with the residual functional capacity described above. The record indicates that despite the claimant's testimony and allegations, the claimant reported that she was able to remember her appointments, drive a motor vehicle, cook, walk to the mailbox, shower, dress herself, grocery shop, put away groceries, do laundry, put away clean clothes, watch television, play on the computer, read books, socialize with family members, talk to her friend on the telephone, pay bills, count change, handle a savings account and use a checkbook/money orders, activities which generally reveal functioning at a greater level than alleged . . . . Overall, these activities, when viewed in conjunction with the other inconsistencies regarding the claimant's allegations of pain and dysfunction, further limit the claimant's credibility in discussing [her] symptoms.

(R. 17). The ALJ went on to note that Claimant's pain medications, radiofrequency ablations, and

---

[3] Claimant specifically argues that the ALJ failed to include the limitations contained in the Reports of Contact in his hypothetical questions to the VE, *see* Pl.'s Mem. [DE-26-1] at 17-18, but as the court is considering these arguments together, it will take up this argument in regards to the ALJ's credibility and RFC determinations as well.

back injections improved her back pain, Claimant's left knee pain was well-controlled by anti-inflammatory medications, Claimant reported pain levels of 0/10, examinations revealed no excessive daytime somnolence and Claimant's sleep apnea improved with the use of a BiPAP and CPAP machine, Claimant's depression medications improved her symptoms significantly, Claimant was losing weight, and Claimant's carpal tunnel surgery on her right hand improved her symptoms. (R. 17-18). Ultimately, the ALJ concluded that:

> [o]verall, the doctor's reports fail to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant's symptoms were genuine. Although the claimant has alleged various side effects from the use of medications, the medical records do not corroborate those allegations. There is no evidence that the claimant ever reported sleepiness or drowsiness from her medications to any of her physicians. Additionally, given the claimant's allegations of totally disabling symptoms, one might expect to see some indication in the treatment records of permanent restrictions placed on the claimant by the treating doctor. A review of the records in this case reveals no restrictions recommended by the treating physician.

(R. 18).

As an initial matter, Claimant correctly points out that the ALJ misstated several aspects of the Reports of Contact. Citing to the Reports of Contact, the ALJ noted that Claimant could "remember her appointments, drive a motor vehicle, cook, walk to the mailbox, shower, dress herself, grocery shop, put away groceries, do laundry, [and] put away clean clothes . . . ." (R. 17). A review of the Reports of Contact demonstrates that while Claimant may indeed engage in these activities, there are qualifications present in the Reports of Contact that the ALJ failed to include in his discussion. For example, in the Report of Contact dated July 29, 2010, after speaking with Claimant, Khadijah Carpenter documented the following: Claimant's back hurts after sitting for 30 minutes, when Claimant tries to cook it feels like her back is going to break, Claimant sits in a chair to cook, and Claimant can walk around the house and to the mailbox, but then her back hurts and

22

she is out of breath. (R. 496). Further, Claimant can get in and out of the shower herself, dry off, and put on her gown but her back hurts afterwards and she has to use the walls to get around, Claimant has to walk slow and take her time at the grocery store, Claimant's son puts the groceries away because Claimant is unable to do so, and Claimant can put her laundry into the washer and dryer and then put the clean clothes into the dresser, but is unable to hang her laundry on the clothesline. *Id.* Claimant leaves the house very rarely, it takes Claimant 10 or 15 minutes to get out of the car because of her problems with her left leg, and Claimant's niece keeps track of Claimant's appointments. *Id.* Additionally, in another Report of Contact dated July 29, 2010, Khadijah Carpenter spoke with Claimant's niece, Ladonna Hardee, and documented the following: Claimant can stand for about five minutes and then needs to sit down and it takes a while for her to recover, Claimant has trouble walking and gets out of breath easily, Claimant does not get out very much any more and if she does go out will stay out for an hour at the most, and Claimant is able to remember her appointments if they are programmed in her phone. (R. 495).

"Errors are harmless in social security cases when it is inconceivable that a different administrative conclusion would have been reached absent the error." *Barnes v. Colvin*, No. 5:12-CV-696-D, 2013 WL 6985182, at *13 (E.D.N.C. Nov. 13, 2013) (unpublished) (quoting *Austin v. Astrue*, No. 7:06-CV-622, 2007 WL 3070601, at *6 (W.D. Va. 2007) (internal citation omitted)), *adopted by* 2014 WL 126059 (E.D.N.C. Jan. 13, 2014). Here, even though the ALJ misstated some of the contents of the Reports of Contact, this error is harmless where substantial evidence still supports the ALJ's credibility determination when the error is disregarded. *See Tomassetti v. Astrue*, No. 7:11-CV-88-D, 2012 WL 4321646, at *11 (E.D.N.C. Aug. 22, 2012 (unpublished) (determining that even if the ALJ erred in finding that the claimant had not been prescribed narcotic pain

medication in the credibility analysis, "the contrary finding by the ALJ would constitute harmless error and her credibility determination would remain supported by substantial evidence in light of the numerous other factors and large body of medical records and other evidence upon which she based her determination."), *adopted by* 2012 WL 4321632 (E.D.N.C. Sept. 20, 2012); *see also Vick v. Astrue*, No. 5:11-CV-601-D, 2013 WL 511040, at *10 (E.D.N.C. Jan. 10, 2013) (unpublished) (holding that any error as to the claimant's ability to afford treatment was harmless where the failure to seek treatment was only one factor supporting the ALJ's conclusion. "The court finds that, even if this factor is disregarded, substantial evidence would continue to support the ALJ's determination that [claimant's] mental impairments are not disabling. In other words, disregard of this factor could not reasonably be expected to change the outcome of the case."), *adopted by* 2013 WL 508340 (E.D.N.C. Feb. 9, 2013).

The ALJ also relied on several other factors which are supported by the record to determine that Claimant's depiction of her limitations was not fully credible. For example, he noted that Claimant's pain medications, radiofrequency ablations, and back injections improved her back pain and Claimant did not report any side effects from medications to her doctors. (R. 18); (R. 500–October 26, 2011 treatment note stating "[p]ain control is good" and "[m]edication side effects are none"); (R. 509–June 3, 2011 treatment note stating that Claimant had no medication side effects and noting "[t]he recent Trigger point injections of lumbar region were [sic] continue to be effective."); (R. 518–January 24, 2011 treatment note stating "[p]ain control is good" and "[m]edication side effects are none"). The ALJ also noted that Claimant's left knee pain was well-controlled by anti-inflammatory medications and Claimant reported pain levels of 0/10. (R. 18, 570, 572-73, 594-95). Further, Claimant's depression medications improved her symptoms significantly

24

(R. 496), Claimant was losing weight (R. 594-95), and Claimant's carpal tunnel surgery on her right hand improved her symptoms (R. 49). (R. 17-18). The ALJ also relied on the fact that none of Claimant's treating physicians imposed limitations or restrictions on Claimant, which is supported by the record as well. (R. 18). Thus, even though the ALJ misstated the contents of the Reports of Contact, this error is harmless where substantial evidence still supports the ALJ's credibility determination and Claimant's argument on this issue is without merit. *See Tomassetti*, 2012 WL 4321646, at *11. Additionally, where Claimant's argument as to the RFC is that the ALJ did not properly consider the medical opinion evidence from Claimant's treating and examining physicians which bolsters Claimant's subjective testimony, and the record is devoid of any opinion from a treating or examining physician and the ALJ did not err in finding Claimant less than fully credible, this argument as to the RFC determination is also without merit.

### 2.     Hypothetical Questions to the VE

The purpose of a VE's testimony is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). In order for a VE's opinion to be "relevant or helpful," it must be given in response to a proper hypothetical question. *Id.* A proper hypothetical question "fairly set[s] out all of claimant's impairments" that are supported by the record. *Id.*; *Russell v. Barnhart*, 58 F. App'x 25, 30 (4th Cir. 2003) (per curiam) (unpublished) (holding the ALJ's hypothetical question "adequately contemplated all of [Claimant's] impairments and resulting limitations" as evidenced by the record); *Cannon v. Astrue*, No. 4:08-CV-160-D, 2010 WL 902485, at *2 (E.D.N.C. Mar. 11, 2010) (unpublished) (same). Further, the task of the reviewing court is simply to determine whether substantial evidence supports the ALJ's decision, not to "substitute [its] judgment for that of the

[Commissioner]." *Mastro*, 270 F.3d at 176. It is insufficient for the Claimant to point to other record evidence and argue that the ALJ's decision is unfounded, *Frazier*, 2008 WL 138050, at *14, as this invites the court to re-weigh the evidence and substitute its own conclusions for those of the Commissioner, *Hays*, 907 F.2d at 1456.

Here, Claimant argues that the ALJ failed to include in his hypothetical questions to the VE the limitations imposed on Claimant by her treating and examining physicians, limitations from the Reports of Contact by the State Agency, and Claimant's severe impairment of melanoma and depression. Pl.'s Mem. [DE-26-1] at 17-18. However, as discussed above, the record does not contain any limitations imposed on Claimant by any treating or examining physicians, and Claimant does not identify any such limitations. Further, Claimant does not identify any particular limitations in the Reports of Contact or that result from her melanoma and depression that the ALJ failed to include in the hypothetical questions to the VE. As discussed above, the ALJ did not find Claimant fully credible about her limitations and thus properly did not include the limitations which were unsupported by the record in the hypothetical questions to the VE. *Walker*, 889 F.2d at 5. Accordingly, Claimant's argument on this issue is without merit.

## VI. CONCLUSION

For the reasons stated above, Claimant's Motion for Judgment on the Pleadings [DE-26] is DENIED, Defendant's Motion for Judgment on the Pleadings [DE-27] is ALLOWED, and Defendant's final decision is affirmed.

So ordered, this the *11* day of September, 2015.

Robert B. Jones, Jr.
United States Magistrate Judge

26